Merrick, J.
The plaintiff, Michelle Morris (“Morris”), a former employee of the defendant, J.J. Best & Company (“Best”), brought this action against Best pursuant to the statutory remedy for unpaid wages, G.L.c. 149, §§148,150, to recover earned vacation pay accrued at the time of her employment termination.
Best was engaged in the business of financing the purchase of classic cars. Morris was employed by Best from March of 2002 through July 22, 2004. When she was hired, Morris lived in New Bedford and commuted to Best’s offices in Chatham, a commute of 70 to 75 miles. Morris and her husband later moved to Harwich. During her employment, Best promoted Morris from assistant title clerk to underwriter, and also gave her a favorable letter of recommendation for her current employment. At the time of her termination in July of 2004, Morris was earning $625.00 per week plus two weeks paid vacation annually.
On June 15, 2004, Morris went to see Best’s principal owner and president, John Meldon (“Meldon”), to tell him of personal scheduling problems she was having. Meldon agreed to reduce her work hours without a cut in pay. Meldon also told Morris that Best planned to relocate its business in about a month to a building it had bought in New Bedford. Ultimately, Friday, July 23, 2004 was scheduled to be the last day at the offices in Chatham. On Thursday, July 22,2004, the day before the scheduled move, Morris had another conversation with Meldon. She told him she had been well treated, but after talking with her husband, she thought that it did not make sense for her to spend two and a half hours a day commuting and paying for additional gas with no increase in pay. Meldon was not pleased. He felt he was being extorted, and refused to increase Morris’s salary. He told her that she was leaving Best “high and dry.” He reminded her that the next day, Friday, July 23, would be the last day for employees not making the move. Morris testified that Meldon also told her that “he would fight me to the end, on unemployment, on everything that they owe me.” Morris quit and walked out. She called in sick the next day, Friday, July 23,2004. When she received her final paycheck, it did not include her vacation *234 pay, and Best refused her subsequent demands for payment.[2] Morris then filed for unemployment insurance, but, true to Meldon’s word, Best appealed the award of unemployment benefits by the Division of Unemployment Assistance to her. Best lost that appeal.
Morris filed this suit pursuant to the unpaid wages provisions of G.L.C. 149, §§148, 150. After a bench trial, Morris obtained a judgment of $1,250.00 in damages, trebled to $3,750.00, attorney’s fees of $8,260.00, and costs of $954.00, for a total of $12,964.00. Best has appealed, asserting that the trial judge erred by 1) awarding vacation pay not required by Best’s written vacation policy, 2) awarding treble damages in the absence of outrageous conduct or bad faith, and 3) failing to limit, damages to $5,000.00 on the basis of judicial estoppel, despite the fact that Morris’s counsel had opposed a deposition under Mass. R. Civ. R, Rule 30(a) (ii), on the ground that the matter in controversy was less than $5,000.00. In reviewing the sufficiency of the evidence on any issue, we consider the evidence in the light most favorable to the plaintiff. Wilson v. Honeywell, Inc., 409 Mass. 803, 804 (1991).
1. The parties agree that Best’s employees, including Morris, were entitled to two weeks paid vacation after 12 months and two weeks per year thereafter. Best had a written policy describing its paid leave benefits, which included vacation time, sick leave, bereavement time, and jury duty. The written policy contained a general description applicable to all types of paid leave under the heading “Pay defined for Paid Leave,” which included the provision that “[r]eimbursementfor leave not taken is at the discretion of the company.” Subsequent sections described the various specific benefits and conditions applicable to each type of leave. The section titled “Vacation Time” provided: “A full time employee, in good standing, earns two weeks vacation time after completing 12 consecutive months of employment, and will earn 2 weeks of vacation time for every year thereafter ...” (emphasis in original; underlining supplied).
Morris testified that she understood she was entitled to two weeks vacation, but never saw the written policy until she requested payment for her vacation pay. She also stated that she was never told of a written policy, or any provision, that payment was at the discretion of the employer. Meldon testified that he did not give Morris the written policy, but left that to Gifford Allen (“Allen”), the company controller. Allen testified that he had a practice of providing copies to employees, but had no recollection of doing so in this case. While there was conflicting evidence on the point, the judge was entitled to find that, prior to her termination, Morris never received any written or oral notice of any limitation of her right to the vacation pay in question. The judge was not obligated to find that the “discretionary” limitation on payment for accrued vacation time was included in the employment contract between the parties. Nor was the judge required to accept from spotty records and conflicting testimony that Morris had already used some, or all, of her vacation time on some Fridays. Indeed, Best’s own policy was that vacation time could not be taken in increments of less than a full week.
The trial judge’s finding that Morris was entitled to be paid for two weeks vaca *235 tion was adequately supported by the evidence. “Where [she] was owed vacation time under the employment agreement, payment for that unused vacation time is a form of ‘wages’ that must be paid pursuant to [G.L.c. 149,] §148.” Electronic Data Sys. Corp. v. Attorney Gen., 440 Mass. 1020, 1021 (2003).[3]
2. On the subject of treble damages, the judge correctly ruled, “In W[ie]dman[n] v. The ... B[ra]dford Group, Inc. [,] the Supreme Judicial Court held that when an employee prevails under G.L.c. 149, §150, an award of treble damages is discretionary.”[4] As Best points out, “treble damages are punitive in nature, allowed only where authorized by statute, and appropriate where conduct is ‘outrageous, because of the defendant’s evil motive or his reckless indifference to the rights of others.’” Wiedmann v. Bradford Group, Inc., 444 Mass. 698, 710 (2005), quoting Dartt v. Browning-Ferris Indus., Inc., 427 Mass. 1, 17a (1998).
In a case interpreting G.L.c. 149, §150, the Appeals Court ruled that “because the [superior court] judge made no finding on the question whether the defendant’s conduct was ‘outrageous’ or showed a ‘reckless indifference to the rights of others,’ we must ‘vacate the award of treble damages and remand the issue for the judge’s reconsideration whether treble damages are warranted.’” Killeen v. Westban Hotel Venture, LP., 69 Mass. App. Ct. 784, 788 (2007), quoting Wiedmann, supra. As noted, the trial judge in this case properly ruled that the decision on treble damages was discretionary, and found that “[i]n light of the circumstances presented in the instant case, an award of treble damages is warranted.” She did not specify those circumstances and was not obliged to do so. Under Mass. R. Civ. R, Rule 52(c), as it existed at the time of this trial and before the amendment to that rule, effective March 1, 2008, a district court judge was not required to write specific findings of fact even if she wrote an informal summary of the reasons for her decision. Stigum v. Skloff, 433 Mass. 1011 (2001). What was necessary was that her finding not have been clearly erroneous or unsupported by the evidence.
Viewing the evidence in the light most favorable to Morris, she had been a good employee and was entitled to payment for her earned vacation. Best withheld that vacation payment out of pique at her refusal to move with the company to New Bedford (leaving it “high and dry”), told her it would “fight [her] to the end on unemployment, on everything they owe [d her],” and did just that. Those facts establish “an intentional and wilful violation of the parties’ contract, and conduct showing a reckless indifference to [Morris’s] rights.” DeSantis v. Commonwealth Energy Sys., 68 Mass. App. Ct. 759, 769 (2007).
*236 3. Best also asserts that Morris is barred from recovering a judgment in excess of $5,000.00 by the doctrine of judicial estoppel. In October of 2006, Best’s counsel noticed the taking of Morris’s deposition in this action. Morris’s counsel wrote back that Besfs counsel must first obtain a court order under Mass. R. Civ. P., Rule 30(a)(ii), as “the matter in controversy is less than Five Thousand ($5,000.00) Dollars.”[5] Best did not contest that position in the trial court, but merely abandoned the idea of a deposition. As noted above, Morris’s claim was for $1,250.00, which was trebled to $3,750.00, plus attorney’s fees of $8,260.00.[6] “Judicial estoppel is an equitable doctrine that precludes a party from asserting a position in one legal proceeding that is contrary to a position it had previously asserted in another proceeding.” Tinkham v. Jenny Craig, Inc., 45 Mass. App. Ct. 567, 574 (1998), quoting Blanchette v. School Comm. of Westwood, 427 Mass. 176, 184 (1998). Judicial estoppel must be distinguished from judicial admissions, binding admissions in the same action, which, in turn, must be distinguished from assuming inconsistent positions in the same litigation. See Kaplan v. Plymouth Rock Assur. Co., 2008 Mass. App. Div. 160, 161 & n.2.
We need not consider whether Morris’s counsel’s statement in connection with the deposition issue that the “matter in controversy” was less than $5,000.00 created a judicial estoppel or amounted to a judicial admission. Where the amount of damages determines some procedural issue, statutory treble damages or attorney’s fees are generally not considered part of the damages. See, e.g., Travis v. McDonald, 397 Mass. 230, 232 n.1 (1986) (single damages govern small claims jurisdictional amount); Patry v. Liberty Mobilehome Sales, Inc., 394 Mass. 270, 272 (1985) (“Attorney’s fees are not part of the damages suffered in a G.L.c. 93A action.”); Cifizzari v. D’Annunzio, 394 Mass. 149, 150 (1985) (treble damages not included to classify case under former remand, removal, and transfer system). Here, even the trebled damages were less than $5,000.00. There was, thus, no inconsistency between Morris’s position with regard to the deposition and the judgment she obtained.
4. A large portion of the attorney’s fees had not even been incurred when the deposition issue arose. Indeed, the final amount of attorney’s fees has not yet been assessed. Morris, in her brief, has requested appellate attorney’s fees and is entitled to them. Yorke Mgt. v. Castro, 406 Mass. 17, 20 (1989). Morris is to submit her claim for appellate attorney’s fees in the form prescribed in Yorke Mgt. within two weeks of the date of this opinion. Best will have two weeks from Morris’s submission to file any written opposition.
Judgment affirmed.
So ordered.

 The last paycheck also did not include sick pay for Friday, her last day. Morris has not appealed the judge’s denial of her claim for that item.

 Given the judge’s findings, the present case, like Electronic Data Sys. Corp. v. Attorney Gen., does not involve a specific provision for forfeiture of vacation pay in the event of voluntary or involuntary termination. Id. at 1021-1022. In any event, the nature of Morris’s termination (short notice of an intention not to move with the company to a distant location) does not fall squarely within either.

 Best’s assertion in its brief that the judge made a contrary ruling in a finding on attorney’s fees made three months after this ruling is inaccurate. Certainly, if Best actually believed that the judge made conflicting rulings on the subject, its remedy was a motion under Mass. R. Civ. P., Rule 59. Ramirez v. C.L.A.S., Inc., 2000 Mass. App. Div. 16, 17, citing Cook v. Kozlowski, 351 Mass. 708 (1967).

 Mass. R. Civ. R, Rule 30(a) (ii) provides that “[ljeave of court [to take a deposition] ... must be obtained only if... there is no reasonable likelihood that recovery will exceed $5,000 if the plaintiff prevails.”

 At oral argument, Best’s counsel conceded the propriety of the legal work done and the calculation of fees, but contests them only on the ground that they raise the entire judgment above $5,000.00.