Swan, J.
Commerce Insurance Company (“Commerce”) has appealed the default judgment under G.L.c. 93A entered against it and in favor of Advanced Spine Centers, Inc. (“Advanced”).
Commerce insured a 1997 Pontiac owned by Adriana Lopez. On November 13, 2007, Angela Ramirez was driving the car when it was struck by another vehicle pulling out of a parking space in Lawrence, Massachusetts. Her passenger, Jose Nieves (“Nieves”), was injured. He was treated at Lawrence General Hospital and then received chiropractic services from Advanced. As an unpaid party, Advanced filed a claim for personal injury protection (“PIP”) benefits under G.L.C. 90, §34M with Commerce. The claim was for $2,570.00 for twenty-nine chiropractic visits through February 20, 2008. After reviewing Advanced’s medical bills and records, another chiropractor informed Commerce that the treatment was not “necessary, reasonable or relatable to this motor vehicle accident.” Commerce denied the claim. Advanced commenced this action against Commerce, alleging that the failure to pay the PIP claim violated both G.L.c. 90, §34M and G.L.c. 93A §11-
Discovery proceeded apace, and included a request by Advanced for production of documents pursuant to Mass. R. Civ. R, Rule 34. One request, number 8, called for copies of all written communications between Advanced, or its attorney, and Commerce relating to the claim. Commerce produced the documents.[1] Another request, number 21, asked for “[cjopies of all claim activity records and logs of [Commerce] related to the accident alleged in the complaint and the claims of [Nieves or Advanced] for insurance benefits of any kind.” Commerce responded, “See documents produced in response to Request No. 8.” At a case management conference on June 19, 2009, a pretrial order was issued that stated, in part: “All motions for sanctions pursuant to Rule 37 Mass. R. Civ. P, for failure to make discovery must be filed and resolved by [August 28,] 2009. Such motions will not be entertained after the case has been set for trial except those permitted by trial order No. 5 relating to audio-visual expert witness depositions.” A trial date was set for December 2, 2009 at a pretrial conference. No motions for sanctions were filed.
*198 The G.L.c. 90, §34M portion of the complaint was voluntarily dismissed by Advanced, and the case went to trial solely on the G.L.c. 93A, §11 count. The day before trial, Advanced’s counsel served upon Commerce a subpoena duces tecum for the “complete claim file” with “all claim activity records and logs.” Counsel for both parties appeared on the day of trial. The subpoena was as yet unanswered, having been brought to Commerce’s claim supervisor at 9:21 A.M. that very morning. After some ensuing discussion on the matter among counsel and the trial judge, during which Commerce’s attorney argued that “communications, thoughts, mental impressions of the claim representative” were privileged under Mass. R. Civ. R, Rule 26(b), the case was continued for an hour for the materials to be produced or an argument on privilege to be prepared. When the case was called again, the claim file had been produced, apparently retrieved from a car in a nearby parking lot.[2] The file included “file running notes.”[3] Advanced’s counsel maintained that these notes were the “claim activity records and logs” requested in the pretrial discovery request, and that neither were they produced, nor was a privilege asserted at the time of the request. Commerce’s counsel, referring to the fact that the documents, be they “running notes” or “activity logs,” were now in Advanced’s counsel’s possession, stated, “He’s had them for two hours.” Expressing his dissatisfaction with the late production of documents, the trial judge allowed Advanced’s oral motion for the entry of default. The court entered an order, “Judgment for plaintiff on its oral motion. Same as discovery sanction.” The record does not reflect that either the judge, or Advanced’s counsel, examined the running notes, but Advanced conceded at oral argument that neither did.
On January 6, 2010, both counsel returned to court for an assessment of damages hearing on the G.L.c. 93A, §11 count. Advanced submitted copies of its records, bills with interest totaling $3,068.75, and an affidavit of attorney’s fees. No testimony was taken. Commerce’s counsel argued that his client did not act in “business-to-business bad faith... when it failed to pay the amount of medical billing in dispute.” The court heard the oral arguments of counsel, much of it about the untimely production of documents. After taking the matter under advisement, the trial court entered judgment for Advanced in the sum of $15,010.03.[4] The court also denied Commerce’s motion to remove the default. Commerce argues that the trial judge committed error by entering a default, denying Commerce’s motion to remove the default, and conducting an assessment of damages without hearing evidence on whether Commerce engaged in a wilful and knowing violation of G.L.c. 93A.
As to the entry of default, it is true, as Commerce argues, that the court-imposed deadline for Advanced to move for Rule 37 sanctions for violation of a discovery *199 order had passed. But there was no way for Advanced to know of any discovery noncompliance prior to that deadline. Advanced requested activity records and logs by way of Rule 34. Commerce answered by referring to its response to the request for Advanced-Commerce communications. As the documents produced under the latter response included no activity records and logs, Commerce was, in effect, informing Advanced that it had no activity records and logs in its possession. Only when Advanced subpoenaed activity records and logs on the eve of trial were they forthcoming, at a time when Advanced was left without a Rule 37 remedy. Commerce’s argument is thus unavailing.
Commerce suggested on the trial date that the running notes it produced were different from “activity records and logs,” a term that Commerce labeled as ambiguous. Yet when activity records and logs were demanded by subpoena, Commerce produced the running notes. Haying examined the running notes, we are hard pressed to see how they are anything but activity records and logs. Commerce’s position at pretrial appeared to be that activity records and logs fell under the category of Advanced-Commerce communication (to which they bear no resemblance), that running notes did not constitute such communications, and that Commerce, therefore, did not have to produce them under Advanced’s Rule 34 request — a position that defies credulity. Nor do we credit Commerce’s statement at oral argument that Advanced’s counsel is familiar with the format of running notes used by Commerce and could have requested them with specificity during pretrial discovery. The undeniable facts are that Advanced did seek the documents, and that Commerce neither produced the documents, nor claimed a privilege or maintained a privilege log. See Mass. R. Civ. R, Rule 26(6) (5).
The question is what was the trial judge to do. As with sanctions for violating discovery orders under Rule 37 (6) (2), the court has a panoply of options: it may order that certain matters or facts be taken as established, disallow certain claims or defenses, exclude proposed evidence, strike pleadings, stay proceedings, make a finding of contempt, or impose costs. By any measure, terminating an action by dismissal or default and totally depriving a party of its day in court must be viewed as the ultimate sanction, resort to which should be had only after less severe remedies have been considered.
We addressed this very question with the same parties in Advanced Spine Ctrs., Inc. v. Commerce Ins. Co., 2011 Mass. App. Div. 91 (No. 10-ADMS-10053, issued May 4, 2011). There, too, Advanced, having dismissed its G.L.c. 90, §34M claim and proceeding under G.L.c. 93A §11, received from Commerce, on the day before trial, an investigator’s report which Commerce had withheld as work product. The judge allowed Advanced’s motion in limine to establish its c. 93A claim — the functional equivalent of entering a default — and on a later date assessed treble damages and attorney’s fees. We vacated the judgment, holding that “a trial judge is given wide discretion in sanctioning a party for discovery violations,” id. at slip op. 5, citing Global Investors Agent Corp. v. National Fire Ins. Co. of Hartford, 76 Mass. App. Ct. 812, 820 (2010), but added:
[Sjanctions are subject to an examination under principles of due process. Gos v. Brownstein, 403 Mass. 252, 257 (1988).... Relevant factors in a due process examination include: “the degree of culpability of the non- *200 producing party; the degree of actual prejudice to the other party; whether less drastic sanctions could be imposed; the public policy favoring disposition of the case on the merits; and the deterrent effect of the sanction.” Keene v. Brigham & Women’s Hosp., Inc., 56 Mass. App. Ct. 10, 21 (2002), S.C., 439 Mass. 223 (2003).... The judge’s action in this case did not comport with the requirements of due process. Commerce’s eleventh hour production unquestionably warranted a serious examination of Commerce’s conduct and its degree of fault as well as the imposition of an appropriate sanction. Our opinion is not to be understood to condone Commerce’s tactics. ... The reasonableness of a sanction should be “measured against the pertinence of the requested documents.” Shapiro v. Public Serv. Mut. Ins. Co., 19 Mass. App. Ct. 648, 659 (1985). Finally, nothing in the record supports a finding that the judge weighed any lesser sanctions ... or considered the strong judicial policy favoring a trial on the merits. Monahan v. Washburn, 400 Mass. 126, 129 (1987). The judge articulated no reason for finding that the deterrent effect of imposing the “extreme” or “drastic” sanction was warranted.
Id. at slip op. 6. See Henshaw v. Travelers Ins. Co., 377 Mass. 910, 911 (1979) (“We do not disturb the judge’s conclusion that [the insurer] violated the discovery orders, but we believe, on consideration of all the circumstances of this case, that the consequences flowing from the default judgment exceed the bounds of reasonableness.... We believe that [the insurer] should be subjected to appropriate sanctions short of being deprived of a trial on the merits of the plaintiff’s claim.”).
Here as well, there was no such consideration. Had the judge reviewed the newly appearing activity logs or running notes, he would have seen, as we have, that much of the material dealt with insignificant office chatter regarding progress of the claim investigation. What substantive data there is deals with Commerce’s concerns about the legitimacy of the claim and the reasonableness of Nieves’ treatment, all matters that would presumably be helpful to Commerce in defending against an unfair practices allegation.[5] It would have been far better to continue the matter to give Advanced time to review the documents, or to preclude Commerce from offering the log entries as justification for its delay or refusal to settle the claim. Costs could have been assessed as well. We noted our disapproval of Commerce’s tactics in Advanced Spine Ctrs., Inc., supra, and its stance here, which steers very close to pettifoggery *201 and gamesmanship, exhibits a disturbing trend. But by the same token, the court should not have reacted without reflection.[6]
Judgment for Advanced Spine Centers, Inc. is vacated, and the case is returned to the Lowell Division of the District Court Department for trial.
So ordered.

 The documents are reproduced in the record appendix.

 At oral argument, counsel indicated that the car belonged to the Commerce claims adjuster.

 These documents, as well, are reproduced in the record appendix.

 Consisting of double damages of $8,147.13, prejudgment interest of $379.46, and attorney’s fees of $6,483.44.

 The logs have such entries as: “No injury reported” (November 24, 2007); “Injuries have surfaced ... unlisted operator driving [with] foreign license” (December 5, 2007); “attempts to reach the [insured] have not been successful and the IV [injured victim?] has not been located” January 10, 2008); Nieves “said he was fine because at the time he did not feel any pain ... 1st felt pain the following day ... asked how he was referred to the clinic. He says he asked and someone told him to go there. He says this was someone in the [street], and he doesn’t know their name.... He stopped going to the clinic on his own at the end of Dec” (February 8, 2008); “I am concerned as to why these dates [apparently on Advanced’s sign-in sheet] are crossed off?” (March 14, 2008).

 As we are remanding the matter for a retrial, we need not address the other issues raised on appeal. We note only, as we did in Advanced Spine Ctrs., Inc., supra, that the award of multiple damages “without any evidentiary support, also violated principles of due process.” Id. at slip op. 6. On an assessment of damages in a G.L.c. 93A case, “punitive damages cannot be fixed without an evidentiary hearing to determine how egregious was the conduct of the defendant.” Bissanti Design/Build Group v. McClay, 32 Mass. App. Ct. 469, 471 (1992), citing Flaks v. Koegel, 504 F.2d 702, 707 (2d Cir. 1974). See Kartell v. Geane, 2011 Mass. App. Div. 160 (No. 11-ADMS-10013, issued June 30, 2011).